**Corris L. JACKSON–EL, Plaintiff,**

v.

**Timothy WINSOR, David Ford, Linda ,Rushings, Donald Carrigan, Defendants.**

No. 92–CV–77023–DT.

United States District Court, E.D. Michigan, Southern Division.

Nov. 18, 1997.

Corris L. Jackson–El, Marquette, MI, in pro per.

Peggy L. Miller, Christine M. Campbell, Asst. Atty. Generals, Michigan Attorney General's Office, Lansing, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

DUGGAN, District Judge.

### Introduction

Plaintiff, a prisoner incarcerated in the State Prison of Southern Michigan–Central Complex, Jackson, Michigan, filed a complaint alleging that defendants violated his rights under the federal constitution.[1] Plaintiff contends that defendants retaliated against him for initiating legal proceedings against certain employees at his place of incarceration. Specifically, plaintiff alleges that on January 26, 1993, defendant Winsor and other corrections officers conspired to have defendant Rushings write plaintiff a misconduct ticket for lying to an employee. This misconduct ticket was never issued. Plaintiff also alleges that on January 27, 1993, defendant Winsor falsely called plaintiff a "liar" in front of the unit sergeant. Finally, plaintiff alleges that on January 30, 1993, defendant Winsor planted a makeshift knife in plaintiff's cell, causing plaintiff to be issued a misconduct ticket and to be placed in administrative segregation.

Defendants Winsor and Ford brought a motion to dismiss, or in the alternative, for summary judgment. On May 12, 1997, Magistrate Judge Steven D. Pepe issued a Report and Recommendation (R & R). The magistrate judge recommended that summary judgment be entered on plaintiff's retaliation claim based on the alleged failed effort to ticket plaintiff for lying to an officer on January 26, 1993, and on plaintiff's retaliation claim based on the alleged incident where plaintiff was called a liar on January 27, 1993. (R & R at 13). The magistrate judge recommended that the Court deny defendants' motion with respect to plaintiff's

---

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

retaliation claims based on the alleged knife planting incident on January 30, 1993.[2] (R & R at 13). Plaintiff has filed objections to the magistrate judge's recommendation that the Court dismiss his claims based on the January 26 and 27 incidents. Winsor and Ford have objected to the magistrate judge's recommendation with respect to the January 30 incident.[3] Having received objections to the R & R, the Court undertakes a *de novo* review of those portions of the R & R to which the parties object. 28 U.S.C. § 626(b)(1); *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).

### Defendants' Objections

Defendants argue that this Court should reject the magistrate judge's recommendation that their motion be denied with respect to the January 30 incident during which Winsor allegedly fabricated a misconduct ticket in retaliation for plaintiff's maintenance of the instant suit.

■ Prison officials may violate a prisoner's substantive due process rights if they retaliate against the prisoner for exercising his or her First Amendment rights to file a grievance or a lawsuit. *McLaurin v. Cole,* 115 F.3d 408, 410–11 (6th Cir.1997) (retaliation for filing a grievance for placing shampoo and butter on an inmate's legal materials); *Cale v. Johnson,* 861 F.2d 943, 949–50 (retaliation for filing a complaint about prison food); *see also John L. v. Adams,* 969 F.2d 228, 231–32 (6th Cir.1992) (stating that a prisoner's right to file a lawsuit is protected by the First Amendment). When a prisoner brings a claim of retaliation, the prisoner must show that the exercise of the right was a substantial or motivating factor behind the allegedly retaliatory conduct and that the retaliatory conduct was "shocking to the conscience." *McLaurin,* 115 F.3d at 411.

Defendants argue that they are entitled to qualified immunity on the retaliation claim. Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

[W]hen a defendant moves for summary judgment based on qualified immunity, a plaintiff must effectively pass two hurdles. First, the allegations must state a claim of the violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law.

*Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir.1994). "The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial." *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988). "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of the constitution at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

In their objections to the R & R, defendants raise three grounds for dismissing the instant action.

■ First, defendants argue that they could not have been motivated by plaintiff's suit because plaintiff's first amended complaint was not filed until April 1993, long after the alleged retaliatory conduct occurred

---

**2.** Plaintiff claims that Ford assisted Winsor in planting the knife "by also arranging with the help of Defendants T. Winsor and Albright to have plaintiff stopped as he walked out of the unit. [sic] by two other officials." (Pl.'s Rep. to R & R at 3.)

**3.** Plaintiff initiated this suit in December 1992. Since that date, several defendants have been dismissed and/or added to the action. *See* (R & R at 1 n. 1.) The only defendants remaining in this action are Winsor, Ford, Rushings, and Carrigan. The Court has ordered the dismissal of plaintiff's claims against Rushings and Carrigan in a separate Opinion and Order issued on this date.

on January 30, 1993.[4] According to defendants, this chronology of events precludes a finding that Winsor was motivated by plaintiff's lawsuit to fabricate the misconduct ticket. *See Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988) ("prisoner[s] must allege a chronology of events from which retaliation may plausibly be inferred")

The Court does not agree with defendants on this point. While plaintiff did not file his amended complaint until April 1993, he filed his motion to amend his complaint on January 19, 1993, and plaintiff maintains in his amended complaint that he told Winsor and other guards that he was amending his complaint on that day. Furthermore, plaintiff filed his first complaint on December 8, 1992. Plaintiff's amended complaint alleges that defendants retaliated against him for filing his "complaint." Because the events alleged in the amended complaint occurred after plaintiff filed his initial complaint, and after plaintiff told Winsor that he was amending his complaint, the chronology of events does not support defendants' motion.

■ Defendants next argue that they are entitled to qualified immunity on the retaliation claim because the standard for analyzing retaliation claims was not clearly established at the time of the January 30 incident. Defendants note that while *Cale* required a showing that the retaliatory conduct "shocked the conscience" or amounted to an "egregious abuse of governmental power," at least one court has held that a mere "willful" violation of a prisoner's First Amendment right is sufficient to establish a claim of retaliation. *See Riley v. Kurtz*, 893 F.Supp. 709, 717 (E.D.Mich.1995). Thus, defendants maintain that the law of retaliation was not clearly established because courts could not agree on the appropriate standard to be applied in such cases, and a prison official would not be on notice of exactly what conduct constitutes retaliation.[5]

The Court does not agree. In *Harlow*, the Supreme Court stated that the law must be clearly established at the time the conduct occurred. 457 U.S. at 818, 102 S.Ct. at 2738. The rationale for this rule is that "if the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* In 1988, the Sixth Circuit indicated in *Cale* that a prison guard's retaliatory act must constitute an egregious abuse of governmental power to be actionable. Defendants acknowledge that the Sixth Circuit has never "abdicated" the *Cale* analysis. Furthermore, *Riley* was decided in 1995, long after the conduct allegedly occurred in this case, and the Sixth Circuit noted in *McLaurin* that it "has repeatedly demanded that retaliation claims arising from the exercise of First Amendment rights be shocking to the conscience." 115 F.3d at 410. For these reasons, the Court is satisfied that as of 1993, when the incidents allegedly occurred, it was clearly established that a "shocks the conscience" approach was utilized in the Sixth Circuit.

In addition, even if there was some dispute in the courts whether a "shocks the conscience," or a more liberal (to plaintiffs) "willful violation" approach should be employed, that dispute has no impact on this case. *Cale* clearly held that the "framing" of a prisoner in retaliation for the exercise of his First Amendment rights was a severe abuse of governmental power. Any belief on the part of defendants that a court could analyze their conduct under a standard more favorable to prisoners (i.e., *Riley's* willful violation ap-

---

4. The amended complaint added Winsor as a defendant.

5. Magistrate Judge Pepe issued an R & R on March 31, 1994 that recommended that the Court grant defendants' motion for summary judgment with respect to several defendants. Defendants point out that the R & R presented a similar argument why qualified immunity should bar a retaliation claim. (R & R of March 31, 1994 at 8.) For the reasons discussed *infra*, the Court must reject this argument, at least insofar as it relates to plaintiff's current retaliation claim. The Court also notes that in its order of May 31, 1994, granting the summary judgment motion, the Court stated that no objections to the R & R had been filed and that there was an alternative basis to grant the motion, i.e., the record indicated that the defendants did not, in fact, retaliate against plaintiff by issuing him misconduct tickets.

proach) should in no way have indicated to them that their alleged conduct was constitutionally permissible. Conduct that was unlawful under the "shocks the conscience" standard would certainly remain unlawful under a "willful violation" standard. Therefore, defendants were on notice that their alleged conduct was unlawful, even if they were unsure about the standard that would be used to analyze their conduct.

█ Finally, defendants argue that plaintiff's retaliation claim must be dismissed because it cannot be properly brought as a § 1983 claim pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok*, —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In *Heck*, the Supreme Court held that a state prisoner could not maintain a § 1983 claim against a prosecutor and a police investigator for misconduct during the prisoner's criminal prosecution.[6] The Supreme Court determined that the plaintiff's suit challenged the legality of his conviction and was therefore improperly brought as a § 1983 claim. The Court held that when a plaintiff brings such a claim he or she must first demonstrate that his or her conviction had been invalidated. 512 U.S. at 484, 114 S.Ct. at 2372. Allowing a § 1983 action to proceed without such a showing would impermissibly intrude upon the province of the federal habeas corpus statute. *Id.* at 479, 114 S.Ct. at 2369. In *Edwards,* the Supreme Court employed *Heck* to bar a state prisoner's § 1983 claim seeking damages and declaratory relief for violations of his due process rights during a prison disciplinary hearing. The Court reasoned that the suit ran afoul of *Heck* because the relief he requested necessarily implied the invalidity of the hearing officer's determination of the plaintiff's guilt. —— U.S. at ——, 117 S.Ct. at 1589.

Defendants argue that the principles presented in *Heck* and *Edwards* apply in the instant case. According to defendants, if plaintiff were to succeed on his retaliation claim, the jury would necessarily have to determine that plaintiff did not possess a knife in his room. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990) ("While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted by acts that a prisoner was not entitled to perform."); *see also Thaddeus–X v. Langley,* No. 96–1282, 1997 W.L. 205604 *1 (6th Cir. April 24, 1997) ("Thaddeus–X did not state a claim of retaliation because the record shows that he was guilty of the misconduct with which he was charged."); *Riley v. Evans,* No. 94–1666, 1994 W.L. 652778 *2 (6th Cir. Nov.18, 1994) ("Because the charge was found to be true, Riley cannot state a retaliation claim."). Therefore, a finding that Winsor planted the knife in plaintiff's room and falsified the misconduct ticket would necessarily imply the invalidity of the hearing officer's determination that plaintiff did in fact possess the knife.

The Court agrees that *Heck* and *Edwards* apply to the present case. The *Heck* Court stated the following:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,*[6] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the convic-

---

**6.** The prosecutor and police investigator allegedly engaged in an arbitrary and unreasonable investigation, knowingly destroyed exculpatory evidence, and used an illegal voice identification procedure in the plaintiff's trial. 512 U.S. at 477, 114 S.Ct. at 2368.

tion or sentence has been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,[7] in the absence of some other bar to suit.

512 U.S. at 484, 114 S.Ct. at 2372 (initial emphasis added, footnote omitted). In footnote six of the quoted passage, the *Heck* Court provided an example of a claim that would not directly attack the conviction, but would "necessarily imply" that the conviction was invalid:

> A state defendant is convicted of and sentenced for a crime of resisting arrest, defined as intentionally *preventing a peace officer from effecting a lawful arrest....* He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.

*Id.* at 486 n. 6, 114 S.Ct. at 2372 n. 6. In footnote seven, the Court gave an example of a case in which the suit would not necessarily imply the invalidity of the conviction:

> For example a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Be-

cause of doctrines like independent source and inevitable discovery, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Id.* at 487 n. 7, 114 S.Ct. at 2372 n. 7 (citations omitted).

The instant case is analogous to the first, rather than the second, example. Under *Orebaugh,* plaintiff's retaliation claim could succeed only if plaintiff did not possess the knife. 910 F.2d at 528. If a jury were to find that the misconduct ticket had been falsified by Winsor, it would necessarily have to determine that plaintiff did not possess the knife. Such a determination would directly contradict the hearing officer's determination that plaintiff did in fact possess the knife. Because plaintiff's retaliation claim necessarily implies the invalidity of the hearing officer's determination, the Court must dismiss plaintiff's claim.[7] *See Stewart v. Smith,* No. 95–2752, 1997 W.L. 527747 *1–2 (7th Cir. Aug.22, 1997) (holding that a prisoner's retaliation claim was barred under *Heck* and *Edwards.*) The Court therefore rejects the Magistrate Judge's recommendation that defendants' motion to dismiss the retaliation claim based on the alleged knife planting incident on July 30, 1993 be denied.[8]

The Court recognizes that it will not be necessary in all cases to first set aside the "conviction" before a plaintiff may proceed to pursue his or her § 1983 action. It is only

---

7. The Court notes that *Edwards* involved a disciplinary hearing in which the prisoner's good time credits were revoked, thereby lengthening his period of confinement. In this case, according to plaintiff's complaint, the disciplinary hearing resulted only in his being placed in administrative segregation. The Court believes that *Edwards* applies in this case, notwithstanding the fact the disciplinary hearing did not result in the deprivation of good time credits. *See Stone–Bey v. Barnes,* 120 F.3d 718, 721 (7th Cir.1997); *Burnell v. Coughlin,* 975 F.Supp. 473, 477 (W.D.N.Y.1997) (citing cases); *see also Muhammad v. Bush,* No. 95–1887, 1997 W.L. 434382 *4 (6th Cir. July 31, 1997) (applying *Edwards* where prison hearing resulted in three days of punitive detention).

8. The magistrate judge based his recommendation, in part, on the fact that under *Cale,* such conduct would shock the conscience, and thus,

would constitute a constitutional tort that was "committed and completed *prior* to any disciplinary hearing." (Supp. R & R at 6). Thus "the outcome of the hearing was not relevant except possibly to the measure of damages." *Id.* at 6–7. As indicated above, the fact that there was no "finding of guilt" in *Cale* is, in this Court's opinion, the distinguishing feature between *Cale* and this case. In *Cale,* the § 1983 claim in the district court would not result in "invalidating" any prior finding of guilt. In this case, however, for plaintiff to prevail on his § 1983 claim, a determination would have to be made that plaintiff did not possess the knife, and thus, the determination of "guilt" by the hearing officer was "invalid." It is this "conflict" that the *Edwards* decision seeks to avoid, thus requiring the invalidation of the hearing officer's decision before the plaintiff can proceed with the § 1983 action.

where the action will necessarily imply that the "conviction" was unlawful.[9]

### Plaintiff's Objections

Plaintiff requests that this Court "revisit" the magistrate judge's recommendation that plaintiff's claims based on the January 26 and 27 incidents be dismissed. Plaintiff offers no specific way in which the magistrate judge's recommendation on these matters was erroneous.

The magistrate judge found that it was not clearly established that a corrections officer calling a prisoner a "liar" and making a failed attempt to issue a misconduct ticket could constitute conduct that was actionable in a retaliation claim. The Court does not believe that either action could be deemed to "shock the conscience." Therefore, the Court concludes that plaintiff's claims based on the January 26 and 27 incidents must be dismissed.

For the reasons set forth above,

**IT IS ORDERED** that the motion to dismiss and/or for summary judgment filed by defendants Winsor and Ford is **GRANTED** and this action is **DISMISSED.**

---

**9.** *See, e.g., Edwards*, —— U.S. at ——, 117 S.Ct. at 1589 (Ginsburg, J., concurring) (stating that a procedural defect in which the prison official failed to specify what facts and evidence supported the finding of guilt would not necessarily imply the invalidity of the deprivation of the prisoner's good time credits, and would therefore be cognizable under § 1983).